John T. Masterson, Bar #007447
Joseph J. Popolizio, Bar #017434
Justin M. Ackerman, Bar #030726
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
(602) 263-1700
jmasterson@jshfirm.com
jpopolizio@jshfirm.com
jackerman@jshfirm.com

Michele M. Iafrate, Bar #015115
IAFRATE & ASSOCIATES
649 North Second Avenue
Phoenix, Arizona 85003
Telephone: 602-234-9775
miafrate@iafratelaw.com

Attorneys for Defendants/Petitioners Joseph M. Arpaio in his official capacity as Sheriff of Maricopa County and Gerard A. Sheridan

A. Melvin McDonald, Bar #002298
JONES, SKELTON & HOCHULI, P.L.C.
2901 North Central Avenue, Suite 800
Phoenix, Arizona 85012
Telephone: (602) 263-1700
mmcdonald@jshfirm.com
Special appearing counsel for Petitioner Joseph M. Arpaio in his official capacity as Sheriff of Maricopa County, Arizona

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

| | |
|---|---|
| In re JOSEPH M. ARPAIO, in his official capacity as Sheriff of Maricopa County, Arizona, and GERARD A. SHERIDAN, <br><br>  Defendants/Petitioners, <br><br> and GERARD A. SHERIDAN, <br><br>  Specially appearing non-party/Petitioner, <br><br> vs. <br><br> UNITED STATES DISTRICT COURT for the District of Arizona, | No. 15-72440 <br><br> United States District Court District of Arizona <br> No. CV 07-02513-PHX-GMS <br><br> **MOTION TO STAY DISTRICT COURT PROCEEDINGS** |

4394963.1

Respondent Court,

and

MANUEL de JESUS ORTEGA MELENDRES, et al.,

　　　Plaintiffs/Real Parties in Interest.

　　　Petitioners Sheriff Joseph M. Arpaio and Chief Deputy Gerard Sheridan respectfully request this Court to stay all proceedings in the district court pending the outcome of their Writ of Mandamus which requests the recusal or disqualification of Judge G. Murray Snow.

**I.　INTRODUCTION**

　　　On July 10, 2015, the Court denied Petitioners' Motion for Disqualification and/or Recusal ("Motion for Recusal") of Judge G. Murray Snow. [Doc. 1164, Ex. 1.] The primary focus of the Motion for Recusal was the spontaneous injection of two MCSO internal investigations entirely unrelated to the three defined areas of the contempt proceedings, the Court's independent investigation of these issues, and any other issues, through its Monitor, and Judge Snow's failure to recuse himself in light of his brother-in-law's partnership with Covington & Burling. [*See* Docs. 1150, Ex. 2; 1158, Ex. 3.]

　　　The Court subsequently entered an Order setting several pre-hearing deadlines for the continued contempt proceedings, including deadlines for submitting schedules for the completion of outstanding internal investigations, document production requests, and other discovery. [*See* Docs. 1179, Ex. 4; 1208, Ex. 5.] The Court has also set hearing dates for the resumption of the contempt proceedings, beginning on September 22, 2015. [Doc. 1208, Ex. 5.] Petitioners have already requested that the district court stay the proceedings in anticipation of filing their Writ of Mandamus, [*See* Docs. 1172, Ex. 6; 1176, Ex. 7], which the Court denied. [Doc. 1179, Ex. 4.] On August 3, 2015, Petitioners filed their Writ

of Mandamus requesting that the Ninth Circuit order Judge Snow's disqualification from this action.

Because Petitioners need the opportunity to see an appellate ruling on the issue of recusal of Judge Snow before the contempt proceedings resume, Petitioners respectfully request a stay of all trial court proceedings.

## II. A STAY IS WARRANTED UNDER THE *NKEN* FACTORS

Pursuant to Fed. R. App. P. 8(a)(i), a party must ordinarily move first in the district court for a stay of a district court order pending appeal. Petitioners have already moved for a stay by the district court; the district court denied that motion. [*See* Docs. 1172, Ex. 6; 1176, Ex. 7; 1179, Ex. 4]. In addition, Petitioners must also include the reasons for granting the relief requested. Fed. R. App. P. (8)(b)(i). Pursuant to *Nken v. Holder*, 556 U.S. 418, 434 (2009), Petitioners are entitled to the relief requested.

In *Nken,* the Supreme Court noted that four factors are considered in determining whether a stay pending appeal is required:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

556 U.S. at 434; *see also Lopez v. Heckler*, 713 F.2d 1432, 1435 (9th Cir. 1983). Pursuant to the *Nken* four factor test, a stay is warranted in this action pending the outcome of Petitioners' Writ of Mandamus.

### A. Petitioners are likely to succeed on the merits.

Importantly, to justify a stay "petitioners need not demonstrate that it is more likely than not that they will win on the merits." *Leiva-Perez v. Holder,* 640 F.3d 962, 966 (9th Cir. 2011). The court in *Leiva-Perez* recognized that "[t]here are many ways to articulate the minimum quantum of likely success necessary to justify a stay—be it a 'reasonable probability' or 'fair prospect,' . . . 'a substantial

case on the merits,' . . . or, . . . that 'serious legal questions are raised.'" *Leiva-Perez*, 640 F.3d at 967-68. "Regardless of how one expresses the requirement, the idea is that in order to justify a stay, a petitioner must show, at a minimum, that she has a substantial case for relief on the merits." *Id.* at 968.

The arguments raised in Petitioners' Writ of Mandamus demonstrate a substantial case for relief on the merits because it satisfies the standard set forth in *Bauman v. United States District Court*, 557 F.2d 650 (9th Cir. 1977). The Ninth Circuit has also clarified that when "a district court has erred in deciding a question of law, we may hold that the district court's ruling is 'clearly erroneous as a matter of law as that term is used in mandamus analysis,'" under the *Bauman* test. *In re Cement*, 688 F.2d at 1306-07 (citing *Bauman*, 557 F.2d at 660); *see also Calderon v. United States Dist. Ct.*, 98 F.3d 1102, 1105 (9th Cir. 1996) (A petitioner need not satisfy all five *Bauman* factors, rather, the third factor, a determination that the lower court's decision is clearly erroneous, is dispositive.). For the following reasons, Petitioners have a "substantial case for relief on the merits" because Judge Snow's failure to recuse himself under his July 10, 2015 Order is clearly erroneous as a matter of law. *Leiva-Perez*, 640 F.3d at 968.

### 1. Judge Snow and his spouse are material witnesses in this action.

Under 28 U.S.C. § 455(b)(5)(iv), a judge shall disqualify himself if he or his spouse is likely to be a material witness in the proceeding. Nothing in Judge Snow's July 10, 2015 Order addressed the *uncontradicted evidence* in the record that alleges Judge Snow is biased toward Defendant Arpaio. [*See* Doc. 1117 (Exs. 5-8), Ex. 8]. The facts of the record, therefore, go well beyond an "unsubstantiated suggestion of personal bias or prejudice." [Doc. 1164 at 34:10-11, Ex. 1.] Rather, no reasonable person with knowledge of the facts can deny that Judge Snow is now investigating and presiding over issues involving his own family, which is

expressly forbidden by 28 U.S.C. § 455(b)(5).[1] *See United States v. Alabama*, 828 F.2d 1532, 1545 (11th Cir. 1987) (disqualification required when the judge was "forced to make factual findings about events in which he was an active participant."). Moreover, Judge Snow's attempt to ignore the uncontradicted record by relying on former counsel is improper. The analysis and comments stated by former counsel are now stale in light of Judge Snow injecting the Grissom issue into the OSC hearing, which the Petitioners have always maintained was the basis for their Motion for Recusal. Judge Snow's refusal to recuse himself pursuant to 28 U.S.C. § 455(b)(5)(iv) is, therefore, clearly erroneous as a matter of law.

**2. Expansion of the Monitor's powers and authority was in contravention of Ninth Circuit's previous order, Petitioners' Due Process Rights, and § 455(a) and (b).**

The Court's surprise inquiry into the Grissom/Montgomery investigations also deprived Sheriff Arpaio of his due process constitutional rights. At a minimum, a Court must provide an alleged contemnor with notice and an opportunity to be heard. *Int'l Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 827 (1994). The concept of notice includes prior disclosure and provision of documents to be used at trial, and prior identification of areas of examination. *See generally, Stuart v. United States*, 813 F.2d 243, 251 (9th Cir.1987), rev'd on other grounds, 489 U.S. 353 (1989); *DP Aviation v. Smiths Indus. Aerospace & Def. Sys. Ltd.*, 268 F.3d 829, 846-47 (9th Cir. 2001). Such advance notice is consistent with an alleged contemnor's right to present a defense. *See United States v. Powers*, 629 F.2d 619, 625 (9th Cir. 1980). Further, the law requires progressively greater procedural protections for indirect contempts of complex injunctions that necessitate more elaborate and in-depth fact finding, as in this case. *See Bagwell*, 512 U.S. 821 at 833-34.

---

[1] Indeed, Judge Snow's Order explicitly states that he will continue to investigate into MCSO's remaining internal investigations. [Doc. 1164 at 40:11-12, Ex. 1.]

During the OSC hearing, neither the Court nor any other party gave notice that Defendant Arpaio would be questioned regarding a *Phoenix New Times* article detailing the Grissom/Montgomery investigations or that it would be at all relevant to the contempt proceedings. The blog was not identified as an exhibit. Moreover, Judge Snow subsequently directed his Monitor to investigate further into these irrelevant matters. [Doc. 1117-1 (Ex. 9), Ex. 9., 5/14/15 Transcript at 49:15-21, 51, Ex. 10]. Over Petitioners' objections, Judge Snow ruled that his Monitor would not be "shackled" by Petitioners' constitutional rights.[2] [*Id.* at 56, Ex. 10]. In contempt proceedings, procedural protections such as prior notice are crucial "in view of the heightened potential for abuse posed by the contempt power." *Taylor v. Hayes*, 418 U.S. 488, 498 (1974). The failure to abide by these fundamental and basic constitutional requirements further demonstrates Judge Snow's bias under § 455(a) and (b), which requires his disqualification and recusal.

### 3. Judge Snow improperly engaged (and continues to engage) in an extrajudicial investigation of disputed facts.

Under 28 U.S.C. § 455(b)(1), a judge shall disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." Those facts exist here. Judge Snow's July 10, 2015 Order confirms that he engaged in personal communication with his Monitor regarding matters he thought relevant to the OSC hearing and which he infused into the proceeding. [*See* Doc. 1164 at 20:5-12, Ex. 1]. Specifically, during the lunch of the OSC hearing Judge Snow spoke with the Monitor and received new information regarding matters directly related to, and at

---

[2] Indeed, the Monitor's investigation involving the Grissom/Montgomery issues, raised solely by Judge Snow during the contempt proceedings, is now fully underway. The Monitor and his team have conducted interviews of MCSO personnel, including those who are alleged civil contemnors. The topics of these interviews almost exclusively focused on MCSO's internal investigations, including the investigation involving Dennis Montgomery, what MCSO paid him to do, and whether he was investigating Judge Snow. [*See* 7/31/15 RT at 31:19-32:1, 42:22-43:2, attached as Ex. 13.]

4394963.1                                           6

1  issue in, the OSC hearing. [*Id.*]. This *ex parte* communication is in clear violation of § 455(b)(1) and, at the very least, creates the appearance of impartiality, making recusal mandatory.[3] *See SCA Servs., Inc. v. Morgan*, 557 F.2d 110, 116 (7th Cir. 1977) ("the judge's 'Memorandum of Decision' suggests that he made a confidential inquiry, presumably to his brother, to determine in what capacity Donald A. Morgan was involved in this case. Counsel were not present and were unaware of the inquiry at the time it was made. While it is understandable why the judge may have felt his brother could present the most accurate evidence as to his role in the pending litigation, the judge's inquiry creates an impression of private consultation and appearance of partiality which does not reassure a public already skeptical of lawyers and the legal system."). Judge Snow's failure to recuse himself based on these issues was, therefore, clearly erroneous as a matter of law.[4]

### 4. Recusal was mandatory because Judge Snow's brother-in-law was a partner in Covington & Burling.

Judge Snow's brother-in-law has an interest that could be "substantially affected by the outcome of the proceeding" but Judge Snow nevertheless engaged in a waiver analysis to determine whether he should recuse himself. *See* 28 U.S.C. § 455(b)(5)(iii). While the Court believes this is a waivable conflict, Petitioners do

---

[3] Sheriff Arpaio's subsequent testimony confirming what the Monitor told Judge Snow during their ex parte communication does not save Judge Snow from the appearance of impropriety. The fact of the matter is that there was still an ex parte communication involving disputed facts during the OSC hearing, which is in clear violation of § 455(a) and (b)(1).

[4] The Court's extrajudicial investigation of disputed evidentiary facts through the Monitor continues to prejudice Defendants. In the Court's August 7, 2015 status conference, Judge Snow revealed that he continues to communicate, *ex parte*, with the Monitor and members of his team regarding ongoing interviews of the civil contemnors [*See* 8/7/15 RT at 16:15-18:15, Ex. 14], which involve the very issues now being raised on appeal (i.e., the MCSO internal investigations involving Dennis Montgomery and Karen Grissom). [8/11/15 RT at 52:14-16. Ex. 15] These apparently occurred prior to and just before the 8/7/15 status conference. [8/7/15 RT at 16:15-21, Ex. 14] Similarly, in the August 11, 2015 status conference, the Court continually referenced its communications regarding the Monitor's investigation into MCSO. [*See* 8/11/15 RT at 24:17-22, 51:22-52:3, 53:5-10, attached as Ex. 15].

4394963.1        7

not. *See* 28 U.S.C. § 455(e); Judicial Ethics Advisory Opinion No. 58 (holding that there is a categorical rule of recusal when a relative within the third degree of relationship of a judge has an equity interest in a law firm in a case before that judge); *Potashnick v. Port City Constr. Co.*, 609 F.2d 1101, 1113 (5th Cir. 1980) (quoting 28 U.S.C. § 455(b)(5)(iii)) (holding that "when a partner in a law firm is related to a judge within the third degree, that partner will always be 'known by the judge to have an interest that could be substantially affected by the outcome' of a proceeding involving the partner's firm."); *id.* (concluding that a per se rule requiring recusal "will serve to promote public confidence in the integrity and impartiality of the judiciary in general and of the participating judge in particular"). Regardless, on the eve of trial, Judge Snow permitted Petitioners to waive an unwaivable conflict. [Doc. 541, Ex. 11]. "The express language of section 455(e) dictates that a judge cannot accept a waiver of disqualification on section 455(b)(5)(iii) grounds, such as when a relative of the judge has an interest which could be affected by the outcome of the proceeding." *Potashnick*, 609 F.2d at 1115. Moreover, Judge Snow's Order effectively used Sheriff Arpaio's prior waiver of this issue against all of the alleged contemnors in this action, *including those who were not a part of the prior proceedings*. [*See* Doc. 1164 at 35-36, Ex. 1.][5] Judge Snow's failure to recuse himself and permitting counsel to waive an unwaivable issue was, therefore, clearly erroneous as a matter of law.[6]

---

[5] In fact, Chief Deputy Sheridan neither waived, nor was provided the opportunity to waive, this conflict. In addition, the Court did not provide any other alleged contemnor the opportunity to waive what it deems to be a waivable conflict, either.

[6] Regardless of the Courts' concerns regarding timeliness, consideration of the merits of Petitioners arguments is favored due to the Courts' "unwavering commitment to the perception of fairness in the judicial process." [Doc. 138 at 13:3-6, Ex. 12]; *see also Bradley v. Milliken*, 426 F.Supp. 929, 931 (E.D. Mich. 1977) (despite a motion for recusal being untimely, because 28 U.S.C. § 455 places a duty of disqualification squarely upon the presiding judge, if plaintiffs' "asserted grounds for recusal [were true], [the judge] could not sit on the case regardless of any implied waiver or untimeliness of motion.").

### 5. An objective independent observer would have found recusal necessary under 28 U.S.C. § 455(a).

Finally, the Court impermissibly relied on statements made by Sheriff Arpaio, Chief Deputy Sheridan, and former counsel to make the determination that a reasonable person in light of all the facts would not believe that Judge Snow should recuse himself under 28 U.S.C. § 455(a). [*See e.g.,* Doc. 1164 at 26-27, 31, Ex. 1]. However, none of these individuals were apprised of the full breadth of facts, nor are their opinions proper proxies, sufficient to make a determination that recusal is not required under § 455(a). Specifically, for counsel's opinion regarding recusal in the Grissom investigation could not have taken into account Judge Snow's unexpected injection of the issues into the OSC hearing. Similarly, Sheriff Arpaio and Chief Deputy Sheridan's opinions regarding the Montgomery investigation also failed to take into account the Court's raising of the issue during the OSC hearing. An objective independent observer would have found recusal necessary under § 455(a). Judge Snow's reliance on the opinions of Sheriff Arpaio, Chief Deputy Sheridan, and former counsel as a substitute for what an objective independent observer would believe under §455(a) was, therefore, clearly erroneous as a matter of law.

In addition, in light of all of the aforementioned errors, a reasonably objective observer would believe that recusal was necessary under 28 U.S.C. § 455(a). *Preston v. United States*, 923 F.2d 731, 734 (9th Cir. 1991) ("The relevant test for recusal under § 455(a) is whether "a reasonable person would have a reasonable basis for questioning the judge's impartiality, not whether the judge is in fact impartial."); *see also In re Mason*, 916 F.2d 384, 386 (7th Cir. 1990) (an independent outside observer is "less inclined to credit judges' impartiality and mental discipline than the judiciary…."); *In re Faulkner*, 856 F.2d 716, 721 (5th Cir. 1998) ("[p]eople who have not served on the bench are often all too willing to indulge suspicions and doubts concerning the integrity of judges."); *United States v.*

*Holland*, 519 F.3d 909, 911 (9th Cir. 2008) (quoting *United States v. Dandy*, 998 F.2d 1344, 1349 (6th Cir. 1993) (instructing that when a case is close, the balance should tip in favor of recusal). Judge Snow's failure to find that a reasonably objective observer would believe that recusal was necessary under 28 U.S.C. § 455(a) was clearly erroneous as a matter of law.[7]

### 6. Petitioners' Motion for Recusal was Timely.

Judge Snow's Order repeatedly asserts that the Recusal Motion was untimely. [Doc. 1164 at 2, 27, 32, and 33, Ex. 1.] A motion for recusal under § 455(a) does not have a strict timeliness requirement. *U.S. v. Kehlbeck*, 766 F.Supp. 707 (S.D. Ind. 1990); *see also Conforte*, 624 F.2d at 880 ("we leave open here the question whether timeliness may be disregarded in exceptional circumstances."). Petitioners never argued that the grounds for recusal arose out of the Grissom/Montgomery investigations themselves, but that it was this Court's improper inquiry into these matters during an OSC hearing with three clearly defined topics, none of which included the Grissom/Montgomery investigations, which made these investigations purportedly relevant to the proceedings.

In *Edgar v. K.L.*, 93 F.3d 256, 257-58 (7th Cir. 1996), the Seventh Circuit concluded that a request for recusal was timely despite the fact that defendants had known for at least a year that experts had met from time to time with the judge because "[n]ot until two weeks before seeking disqualification did the defendants learn—by acquiring a detailed agenda prepared by one of the panel members—that at least one meeting had covered the merits of the case, rather than casual chitchat and details such as reimbursement of expenses." Like in *Edgar,* the Recusal Motion was timely filed because the grounds for recusal did not arise until, at the earliest, April 23, 2015 (when the Court questioned Sheriff Arpaio during the OSC

---

[7] For a full discussion of all the facts supporting why a reasonably objective observer would believe that recusal is necessary under 28 U.S.C. § 455(a), *see* Petitioners' Writ of Mandamus at pp. 32-34. [Dkt. 1].

hearing). Moreover, Judge Snow's subsequent Orders, directing that his monitor be given unfettered access to investigate these irrelevant matters did not occur until May 14, 2015. Accordingly, the Recusal Motion was filed within **one month** after Judge Snow's injection of the Grissom/Montgomery investigation into the OSC proceeding, and within a **week** of his subsequent Order expanding his monitor's authority to investigate into these irrelevant subjects. The Recusal Motion was, therefore, timely. Judge Snow's failure to consider the merits of Petitioners' Recusal Motion based on timeliness was, therefore, clearly erroneous.

### B. Petitioners will be irreparably injured absent a stay.

Clearly, a biased judge presiding over civil contempt proceedings and overseeing compliance efforts will irreparably injure the Petitioners. Because Judge Snow also has the ability to recommend criminal contempt proceedings, Petitioners face even greater harm from Judge Snow presiding over this action, if in fact, recusal is required under 28 U.S.C. § 455.

Moreover, a stay is necessary because the resumption of the contempt proceedings will begin on September 22, 2015, with continuing deadlines for discovery related to those proceedings occurring in the interim. The Court has clearly instructed the Monitor to investigate into the Grissom/Montgomery and MCSO internal investigations that have nothing to do with the three defined areas of the civil contempt proceedings. This is not even disputed by Judge Snow. [*See* 7/24/15 Tr. at 21:6-10, attached as Ex. 16; 7/31/15 RT at 44:16-21 (emphasis added), Ex. 13.] Despite this recognition, the Court somehow believes MCSO internal investigations should be considered during the civil contempt proceedings due to some nebulous connection with "the need and necessity and the extent of the remedy required that may be sought by the plaintiff class for materials and other matters that were not provided by the Maricopa County Sheriff's Office prior to trial in this matter…." [*Id.* at 45:2-10.]

Even the Court cannot square its reasoning for inquiry into these matters.

[*Compare id.* at 45:2-4 ("It also seems to me that these matters, even though they cannot and should not, in and of themselves, be the subject of civil contempt, are relevant to the civil contempt hearing") *with id.* at 45:11-14 ("I'm not going to adjust these civil contempt hearings to incorporate those matters which I believe may have been but I do not know were direct violations of my order, but I'm not going to view them necessarily as irrelevant.").] Thus, Petitioners are in the position of limbo. According to the Court, on the one hand, MCSO internal investigations are not a part of the contempt proceedings, but on the other, the Court is "not going to find them irrelevant to the present civil contempt hearing" and that they may be "the subject of a future criminal contempt hearing" if Judge Snow determines that "civil contempt proceedings cannot serve the purposes that are required by the nature of the contempt itself." [*Id.* at 45:11-24.] Absent a stay of all proceedings to determine if the Court is improperly investigating into these admittedly irrelevant matters during these contempt proceedings, Petitioners are, and will continue to be, irreparably harmed.

### C. Issuance of the stay will not substantially injure the other parties interested in the proceeding.

Mandamus actions are given preference over ordinary civil cases in the Ninth Circuit. *See* Fed. R. App. P., Rule 21. Accordingly, Petitioners do not expect the need for a lengthy stay. Moreover, because this action has already been resolved and is in the compliance phase of the proceedings, there is little danger for the stay to materially prejudice the parties' interests. As the Court has already noted, in a civil contempt proceeding, it is "the offended judge [who is] solely responsible for identifying, prosecuting, adjudicating, and sanctioning the contumacious conduct." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 831 (1994). The other parties, therefore, have little interest in the ongoing contempt proceedings, and such minimal interest is not substantially injured given the short expected length of the stay requested by Petitioners.

### D. The public's interest favors a stay.

The right to a neutral and detached judge in any proceeding is protected by the Constitution and is an integral part of maintaining the public's confidence in the judicial system. *Ward v. City of Monroeville*, 409 U.S. 57, 61-62 (1972). Judges must, therefore, adhere to high standards of conduct to preserve the integrity of the judiciary, and to ensure that justice is carried out in each individual case. *York v. United States*, 785 A.2d 651, 655 (D.C. 2001). Accordingly, the public interest greatly favors a stay of this litigation to ensure that the appearance of an impartial judiciary is preserved.

## III. CONCLUSION

Petitioners are entitled to have the trial court's denial of the Motion for Recusal reviewed on appeal before they are subjected to further contempt proceedings. Judge Snow's failure to recuse himself was erroneous as a matter of law. Intervention by this Court through a stay is needed to prevent irreparable harm to Petitioners, the public's perception of an impartial judiciary, and to receive guidance from this Court on whether a different Judge should be assigned to oversee further contempt proceedings and ongoing compliance efforts. Petitioners, therefore, request a stay of the district court proceedings pending this appeal.

1 | RESPECTFULLY SUBMITTED this 20th day of August, 2015.

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ John T. Masterson
   John T. Masterson
   Joseph J. Popolizio
   Justin M. Ackerman
   2901 North Central Avenue, Suite 800
   Phoenix, Arizona 85012
   Attorneys for Defendants/Petitioners
   Joseph M. Arpaio in his official capacity
   as Sheriff of Maricopa County and
   Gerard A. Sheridan

IAFRATE & ASSOCIATES


By /s/ John T. Masterson (*w/permission from*)
   Michele M. Iafrate
   649 North Second Avenue
   Phoenix, Arizona 85003
   Attorneys for Defendants/Petitioners
   Joseph M. Arpaio in his official capacity
   as Sheriff of Maricopa County and
   Gerard A. Sheridan

JONES, SKELTON & HOCHULI, P.L.C.


By /s/ John T. Masterson (*w/permission from*)
   A. Melvin McDonald
   2901 North Central Avenue, Suite 800
   Phoenix, Arizona 85012
   Specially appearing counsel for
   Joseph M. Arpaio in his official capacity
   as Sheriff of Maricopa County, Arizona

4394963.1

14

# **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing MOTION TO STAY DISTRICT COURT PROCEEDINGS with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on the 20th day of August, 2015.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

/s/Karen Gawel

4394963.1        15